UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SANDRA JOYCE MCGRATH and	Case No. 20-11513-ta13
DALE ALLEN ROGERS,

    Debtors.

## **OPINION**

    This is Debtors' second chapter 13 case within a year; their first one was dismissed because they did not comply with a court-ordered deadline. On September 17, 2020, the Court held a hearing on Debtors' motion to extend the automatic stay, to which Debtors' mortgage lender objected. The Court denied the motion, holding that the deadline to enter an extension order had passed. At the hearing, the parties disagreed whether the stay had terminated entirely or only "with respect to the debtor." The Court agreed to rule on that issue separately. Having reviewed the briefs and the relevant law and being sufficiently advised, the Court concludes that the automatic stay has terminated with respect to the Debtors but continues to stay efforts to obtain estate property.

    I.    FACTS

    For the limited purpose of ruling on the scope of the stay termination, the Court finds:[1]

    Debtors live in Capulin, New Mexico. Mr. Rogers works on a nearby ranch. Debtors have two young children.

---

[1] The Court takes judicial notice of its docket in this case, to consider the contents thereof but not the truth of the matters asserted therein. *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020).

Debtors filed their first chapter 13 case on October 28, 2019.[2] The case was assigned to the Honorable Robert H. Jacobvitz. The case appears to have been prompted by an action InBank filed to foreclose on Debtors' house.

Judge Jacobvitz held a preliminary hearing on confirmation of Debtors' chapter 13 plan on April 28, 2020. He entered an order setting a final confirmation hearing for June 16, 2020, and setting a deadline for Debtors to file an operating report and an amended tax return. The order stated that if Debtors failed to comply with the deadline the case would be dismissed without further notice or hearing. Debtors did not timely file their operating report or tax return, so Judge Jacobvitz dismissed the case on June 15, 2020.

Debtors filed this case on July 29, 2020, represented by the same counsel as before. On the petition date they filed a motion to extend the automatic stay. InBank objected to the motion on August 6, 2020, and Debtors replied in support on August 21, 2020. On September 1, 2020 (34 days postpetition), Debtors asked for a hearing on the motion. The Court set a hearing for September 17, 2020 (50 days postpetition). The Court denied the motion from the bench on September 17, 2020, based on the time limit imposed under § 362(c)(3)(B).[3]

At the hearing, Debtors and InBank debated the scope of the stay's termination. Debtors argued that the stay was only terminated for actions against them personally, but not for actions to obtain bankruptcy estate property. InBank disagreed and argued that the stay had terminated for all purposes, including its pending foreclosure action.

---

[2] Case no. 19-12453-j13, United States Bankruptcy Court, District of New Mexico.
[3] All statutory references are to 11 U.S.C. unless otherwise indicated.

## II. DISCUSSION

A. Section 362(c)(3).

At issue is the proper interpretation of § 362(c)(3), which provides:

> [I]f a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)–
> (A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case; [and]
> (B) on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed[.]

Debtors point to the phrase "with respect to the debtor" in subsection (A) and argue that unless extended, the stay is terminated for actions against the debtor but not for actions against estate property (e.g. Debtors' house). InBank takes a contrary view. It argues that the section is poorly drafted and ambiguous, but that the only logical construction is that the stay terminates entirely after 30 days. InBank also argues that Debtors' interpretation renders the subsection of little practical value. Both sides have case law to back up their arguments. Debtors rely on a 2008 decision from the Tenth Circuit Bankruptcy Appellate Panel ("BAP") that is on point and supports Debtor's interpretation. *In re Holcomb*, 380 B.R. 813 (10th Cir. BAP 2008). InBank counters that *Holcomb* is not binding precedent and not as persuasive as the more current First Circuit Court of Appeals decision of *In re Smith*, 910 F.3d 576 (1st Cir. 2018). Finally, the Fifth Circuit recently weighed in on *Holcomb's* side, creating a circuit split. *Rose v. Select Portfolio Servicing, Inc.*, 945 F.3d 226 (5th Cir. 2019).

B.  Stare Decisis and BAP Decisions.

The Court must first decide whether it is bound to follow *Holcomb*. The precedential effect of BAP decisions is not as clear as one might suppose. *See, e.g.*, Precedential Effect of Bankruptcy Court, Bankruptcy Appellate Panel, or District Court Bankruptcy Case Decisions, 8 A.L.R. Fed. 2d 155, §§ 8–10; 8 Norton Bankr. L. & Prac. 3d § 170:17; March and Obregon, *Are BAP Decisions Binding on Any Court?* 18 Cal. Bankr. J. 189, 191-93 (1990).

In the only circuit opinion the Court found that addressed the issue, *In re Silverman*, 616 F.3d 1001 (9th Cir. 2010), the Ninth Circuit stated:

> We have never held that all bankruptcy courts in the circuit are bound by the BAP. *See, e.g., Bank of Maui v. Estate Analysis, Inc.,* 904 F.2d 470, 472 (9th Cir.1990). . . . Nevertheless, we treat the BAP's decisions as persuasive authority given its special expertise in bankruptcy issues and to promote uniformity of bankruptcy law throughout the Ninth Circuit. *See In re Rosson,* 545 F.3d 764, 772 n. 10 (9th Cir.2008); *Bank of Maui,* 904 F.2d at 472 (O'Scannlain, J., specially concurring).

*Id.* at 1005, n.1. Similarly, most lower courts have ruled that BAP opinions do not have stare decisis effect. *See*, *e.g.*, *In re Carrozzella & Richardson*, 255 B.R. 267, 271–73 (Bankr. D. Conn. 2000); *In re Virdin*, 279 B.R. 401, 409 n.12 (Bankr. D. Mass. 2002) (citing *Carrozzella & Richardson*); *In re Williams*, 257 B.R. 297, 301 n.5 (Bankr. W.D. Mo. 2001) (same); *In re Livingston*, 379 B.R. 711, 726–27 (Bankr. W.D. Mich. 2007), rev'd on other grounds, 422 B.R. 645 (W.D. Mich. 2009); *In re Cormier,* 382 B.R. 377, 408-09 (Bankr. W.D. Mich. 2008); *In re Cox,* 393 B.R. 681, 687 (Bankr. W.D. Mo. 2008); *In re Rodriguez*, 487 B.R. 275, 288 (Bankr.

D.N.M. 2013); *In re Junes*, 76 B.R. 795, 797 (Bankr. D. Ore. 1987); *see generally In re Wenzel*, 415 B.R. 510, 516–17 (Bankr. D. Kan. 2009) (discussing but not deciding the issue).[4]

There are two problems with treating *Holcomb* as binding precedent. First, stare decisis is a policy, not a law, and there is no policy in the Tenth Circuit on the stare decisis effect of BAP decisions. In *Livingston* the bankruptcy court observed:

> [T]he Supreme Court has made it equally clear that modern stare decisis is a judicial policy, not a law. *Payne v. Tennessee,* 501 U.S. 808, 828, 111 S.Ct. 2597, 2609–10, 115 L.Ed.2d 720 (1991), *Planned Parenthood of SE Pennsylvania v. Casey,* 505 U.S. 833, 854, 112 S. Ct. 2791, 2808, 120 L.Ed.2d 674 (1992), *Hohn v. U.S.,* 524 U.S. 236, 251–52, 118 S. Ct. 1969, 1977, 141 L.Ed.2d 242 (1998).
> Policies exist, though, only because institutions adopt them. They also exist only so long as the institution desires. The judicial policy of stare decisis is no exception. Modern stare decisis does not exist apart from the court. It exists only at the court's pleasure.

379 B.R. at 723-24 (footnotes omitted). The *Livingston* court concluded:

> I acknowledge my station within the federal judicial hierarchy. Consequently, I have no choice but to accept whatever policies have been adopted by superior courts. In my case, the policies of both the Supreme Court and the Sixth Circuit require that I accept their interpretations of the Bankruptcy Code regardless of whether my own interpretation may be different. However, the Sixth Circuit has not yet adopted any policy concerning the binding effect of bankruptcy appellate decisions. Therefore, I am not obligated under the modern view of stare decisis to treat *Sarff* as binding precedent.

---

[4] There is contrary authority, all from lower courts in the Ninth Circuit. *See, e.g., In re Windmill Farms, Inc*., 70 B.R. 618 (9th Cir. BAP 1987), rev'd on other grounds, 841 F.2d 1467 (9th Cir. 1988); *In re Tong Seng Vue*, 364 B.R. 767, 771-72 (Bankr. D. Ore. 2007); *In re Globe Illumination Co.*, 149 B.R. 614 (Bankr. C.D. Cal. 1993). In addition, one Ninth Circuit judge opined that BAP decision should be binding precedent. *Bank of Maui v. Estate Analysis, Inc.,* 904 F.2d 470, 472 (9th Cir.1990) (O'Scannlain, J., specially concurring). These views were rejected by the Ninth Circuit in *Silverman*.

*Id.* at 726-27. Under current judicial policy, Supreme Court and Tenth Circuit decisions are binding precedent on lower courts in the Tenth Circuit.[5] The Tenth Circuit has not determined that BAP decisions should be stare decisis. Without clear guidance on that point from the Circuit, neither the BAP nor bankruptcy courts should take it upon themselves to declare BAP decisions binding precedent.

Second, given the relationship between bankruptcy courts, district courts, and the BAP, treating BAP decisions as binding precedent would cause more problems than it would solve. District courts are not bound by BAP decisions. *See, e.g., Bank of Maui*, 904 F.2d at 472 ("[I]t must be conceded that BAP decisions cannot bind the district courts themselves. As Article III courts, the district courts must always be free to decline to follow BAP decisions and to formulate their own rules within their jurisdiction."). Contrariwise, BAPs and bankruptcy courts are not bound by district court decisions. In *Carrozella & Richardson*, for example, the court stated:

> It is widely accepted that the decision of one district court judge is not binding on another district judge, even within the same district. *E.g., Threadgill v. Armstrong World Industries, Inc.,* 928 F.2d 1366 (3d Cir.1991). Logically then, a judge of the bankruptcy court—a unit of the district court, 28 U.S.C. § 151—is not bound by the decision of a single district court judge. *See City of Olathe v. KAR Development Associates L.P. (In re KAR Development Associates L.P.),* 180 B.R. 629, 640 (D. Kan. 1995). To view district court decisions as binding on bankruptcy judges, but not other district judges, potentially places a bankruptcy judge in the impossible position of simultaneously following two or more conflicting district precedents.

255 B.R. at 272. In circuits that have BAPs, appeals from bankruptcy courts can either be heard by the district court or the BAP.[6] Given this state of affairs, it would make no sense for bankruptcy

---

[5] Supreme Court decisions are binding on this Court. *See, e.g., Hutto v. Davis*, 454 U.S. 370, 374–75 (1982) (reversing the Fourth Circuit based on its failure to follow Supreme Court precedent). Similarly, the Tenth Circuit has a policy of following its precedents, *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1231 (10th Cir. 2000), which means that the inferior courts in the Tenth Circuit must follow them to avoid reversal.

[6] Appeals from either the BAP or the district court get heard by the circuit court of appeals.

courts to treat BAP decisions as binding precedent; appellants who did not like a BAP decision could appeal to the district court and hope for a different result. *See, e.g., In re Boyd*, 414 B.R. 223, 231 n.12 (Bankr. N.D. Ohio 2008) (bankruptcy courts cannot simply follow BAP decisions because district courts are not bound to follow them and appeals from the bankruptcy court can go either to the district court or the BAP). The same would be true of treating district court decisions a binding precedent. The policies of uniformity, predictability, and efficiency are not advanced by treating BAP decisions as binding precedent. Rather, binding precedent should be left to the Supreme Court and the Tenth Circuit Court of Appeals.

For these reasons, the Court concludes that *Holcomb* is persuasive authority but not binding precedent.

C.     The Court's Interpretation of § 362(c)(3)(A).

It is no revelation to say that § 362(c)(3)(A) is not well drafted. *See, e.g., In re Baldassaro*, 338 B.R. 178, 182 (Bankr. D.N.H. 2006) ("very poorly written"); *In re Charles*, 332 B.R. 538, 541 (Bankr. S.D. Tex. 2005) ("at best, particularly difficult to parse and, at worst, virtually incoherent"); *In re Paschal*, 337 B.R. 274, 277 (Bankr. E.D.N.C. 2006) ("In an Act [BAPCPA] in which head-scratching opportunities abound for both attorneys and judges alike, § 362(c)(3)(A) stands out."). It is not, however, impossible to parse. The subsection could be redrafted like this:

> *If an individual debtor files a 7, 11, or 13 case and had been a debtor in another case that was dismissed within a year prior, then the automatic stay in the second case shall terminate 30 days postpetition for actions on a debt, on property securing a debt, or on a lease; provided, however, that the termination only applies to actions against the debtor, not against estate property.*

Most courts attempting to construe the subsection, including *Holcomb*, read it this way. *See, e.g., Rose,* 495 F.3d at 231; *Holcomb,* 380 B.R. at 816; *Rodriguez*, 487 B.R. at 288; *In re Markoch,* 583 B.R. 911, 914 (Bankr. W.D. Mich. 2018); *In re Thomas,* 2020 WL 4919874, at *2 (Bankr. M.D.

-7-
Case 20-11513-t13    Doc 40    Filed 10/02/20    Entered 10/02/20 10:59:23 Page 7 of 12

Fla.); *see also In re Bender,* 562 B.R. 578, 579 n.1 (Bankr. E.D.N.Y. 2016) (collecting cases). A minority of courts, however, including *Smith,* rewrite the subsection like this:

> *If an individual debtor files a 7, 11, or 13 case and had been a debtor in another case that was dismissed within a year prior, then the automatic stay in the second case shall terminate 30 days postpetition.*

Per the minority view, the subsection is unintelligible, even with the aid of the normal rules of statutory construction, so resort must be made to legislative history. That history, they conclude, shows that Congress wanted to discourage repeat or serial filers. For example, the House Judiciary Committee report on BAPCPA states:

> Sec. 302. Discouraging Bad Faith Repeat Filings. Section 302 of the Act amends section 362(c) of the Bankruptcy Code to terminate the automatic stay within 30 days in a chapter 7, 11, or 13 case filed by or against an individual if such individual was a debtor in a previously dismissed case pending within the preceding one-year period.

H.R. Rep. No. 109-31, pt. 1, at 69 (2005). Based on this, the minority view is that the subsection must be construed to terminate the stay entirely, not just with respect to the debtor. As stated in *Rose*,

> The minority view, adopted by the First Circuit as a matter of first impression in the courts of appeals, "reads the provision to terminate the whole stay." According to the minority, the provision is ambiguous; therefore, congressional intent is determinative. After reviewing the legislative history surrounding the provision and the BAPCPA, the minority conclude that Congress intended the provision to terminate the stay in its entirety.

945 F.3d at 230 (footnotes omitted); *see also In re Reswick,* 446 B.R. 362, 371 (9th Cir. BAP 2011); *In re Goodrich,* 587 B.R. 829 (Bankr. D. Vt. 2018).

The Fifth Circuit disagreed with *Smith* that it was necessary to resort to legislative history to construe § 362(c)(3)(A):

> We adopt the majority position, which has already been applied in the district where Rose has repeatedly filed for bankruptcy. Specifically, after reviewing the plain language of the provision and the context of the provision within § 362, we

-8-
Case 20-11513-t13 Doc 40 Filed 10/02/20 Entered 10/02/20 10:59:23 Page 8 of 12

> conclude that § 362(c)(3)(A) terminates the stay only with respect to the debtor; it does not terminate the stay with respect to the property of the bankruptcy estate.
>
> We believe the language in § 362(c)(3)(A) is clear.

*Rose*, 945 F.3d at 230. The *Holcomb* court also saw "no ambiguity in the language of the statute," and concluded that the subsection could be construed "according to its plain meaning." 380 B.R. at 816.

The Court concludes for a number of reasons that the *Rose/ Holcomb* construction is correct. First, the "with respect to the debtor" phrase clearly limits the scope of stay termination. Congress knew how to terminate the stay entirely. For example, § 362(c)(4)(A)(i), which was enacted at the same time, provides:

> [I]f a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b), *the stay under subsection (a) shall not go into effect* upon the filing of the later case[.]

(italics added). Reading the two adjacent subsections to mean the same thing makes no sense. "[F]or debtors falling under § 362(c)(4)(A)(i), the automatic stay is terminated in its entirety. In contrast, Congress chose to use a qualifier in § 362(c)(3)(A). This can only be interpreted as 'impl[ying] a limitation upon the scope of the termination of the automatic stay.'" *Rose*, 945 F.3d at 231, quoting *In re Williford*, 2013 WL 3772840, at *3 (Bankr. N.D. Tex.). "Congress knew how to terminate the entire stay, and in fact did so in the very next section of the statute." *Williford*, 2013 WL 3772840, at *3. It would be improper to throw out a key phrase in a short subsection when doing so completely changes the meaning.

Second, there are good reasons to protect estate property from stay termination, so limited stay relief benefits creditors generally and may well have been intended.

Case 20-11513-t13    Doc 40    Filed 10/02/20    Entered 10/02/20 10:59:23 Page 9 of 12

> Reading this statute according to its plain meaning is also consistent with the policies behind bankruptcy law. At the core of bankruptcy law is the policy of "obtaining a maximum and equitable distribution for creditors." *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 563, 114 S. Ct. 1757, 128 L.Ed.2d 556 (1994); *Research–Planning, Inc. v. Segal (In re First Capital Mortgage Loan Corp.),* 917 F.2d 424, 428 (10th Cir.1990) (noting that the preference provisions found in 11 U.S.C. § 547 further this important policy). The minority approach circumvents this policy by allowing a single creditor, who may be oversecured, full access to property that would otherwise be property of the estate. Such property may be necessary to implement a debtor's Chapter 13 plan; or, in a Chapter 7 case, equity in the property above the creditor's security interest could be realized by the trustee to pay a dividend to creditors. This dividend could potentially be lost if we adopt the reasoning of the bankruptcy court. Maintaining the stay with respect to such property is an important creditor protection.

*Holcomb*, 380 B.R. at 816.

Third, it seems a dubious practice to use "legislative history" to rewrite a statute, as the *Smith* court did.

> [T]he use of legislative history poses a major theoretical problem: it assumes that what we are looking for is the intent of the legislature rather than the meaning of the statutory text. That puts things backwards. To be "a government of law, not of men" is to be governed by what the laws *say*, and not by what the people who drafted the laws intended. Jurists from Chancellor Kent to Justice Frankfurter have recognized this . . . . Justice Oliver Wendell Holmes wrote: "We do not inquire what the legislature meant; we ask only what the statute means."

Scalia and Garner, Reading Law, 375 (2012). The authors go on to argue persuasively that "legislative intent" may well be a fiction[7] and that even if it is not, gleaning it from a committee

---

[7] "A reliance on legislative history also assumes that the legislature even *had* a view on the matter at issue. This is pure fantasy. In the ordinary case, most legislators could not possibly have focused on the narrow point before the court. The few who did undoubtedly had varying views. There is no reason to believe, in other words, that a 'legislative intent' ever existed." Reading Law, p. 376 (emphasis in original).

report is unlikely.[8] Deleting the phrase "with respect to the debtor" based on alleged legislative intent seems ill-advised.

Finally, there is an easy creditor remedy if the limited stay relief of § 362(c)(3)(A) proves inadequate: a motion for relief from stay. If it acts quickly, a creditor could get a hearing on a stay relief motion when the debtor's motion to continue the stay is heard. On a showing of cause for stay relief, § 362(d) requires prompt action. If no grounds exist, on the other hand, then the estate and/or other creditors may benefit by leaving the stay in place.

The Court will follow *Holcomb* and *Rose* and hold that stay termination in this case is limited to actions taken[9] against the Debtors.[10]

## II. CONCLUSION

Debtors did not move with enough alacrity to extend the automatic stay in this case. Nevertheless, the Court concludes that the stay was only terminated for actions against them personally, not for actions to foreclose on estate property. If InBank wishes to pursue its pending foreclosure action, it must file a motion for relief from stay.

---

[8] "As for committee reports, they are drafted by committee staff and are not voted on (and rarely even read) by the committee members, much less by the full house. And there is little reason to believe that the members of the committee reporting the bill hold views representative of the full chamber." Reading Law, p. 376.

[9] The Court need not address the meaning of "any action taken" (e.g., must the action be pending when the case is filed?) because InBank has a pending foreclosure action, which certainly seems to come within the phrase.

[10] The Court agrees with *Smith* that many "majority view" cases, including *Holcomb*, gratuitously add "and the debtor's property" to their reading of § 362(c)(3)(A)'s scope of stay termination. 910 F.3d at 582. The subsection does not contain that language and the *Rose* court was careful not to add it. The Court will deal with the effect of § 362(c)(3)(A) on debtor's property if it ever becomes relevant.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: October 2, 2020
Copies to: Counsel of record